UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

TAMRA WALKER,

                                   Plaintiff,

                    v.

CITY OF NEW YORK, *et al.*,

                                   Defendants.

------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 26, 2014
```

11 Civ. 2941 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Tamra Walker initiated the instant action on April 29, 2011,

against Defendants City of New York, Raymond W. Kelly, and Rafael Pineiro

(collectively, "Defendants").  In broad summary, Plaintiff asserts claims of

discrimination, retaliation, and hostile work environment under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; Sections 1981 and

1983 of Title 42 of the United States Code; the New York State Human Rights

Law, N.Y. Exec. Law §§ 290 to 297 (the "NYSHRL"); and the New York City

Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 (the "NYCHRL").

Presently before the Court is Defendants' motion for summary judgment.  For

the reasons discussed in the remainder of this Opinion, that motion is granted.

## BACKGROUND

### A.    Plaintiff's Employment with the NYPD and Application for Reinstatement

        Plaintiff is a self-identified African-American female who was employed as

an officer with the New York City Police Department ("NYPD") from

approximately July 2001 to August 2007.  (Def. 56.1 ¶¶ 1-2; Pl. 56.1 Response ¶ 1).[1]  When she initially applied for a position with the NYPD in April 2001, Plaintiff averred that she had never used marijuana or any other controlled substance.  (*Id.* at ¶ 5).  In point of fact, Plaintiff used marijuana several times during her teenage years.  (*Id.* at ¶¶ 4-5; Pl. 56.1 Response ¶¶ 4-5).  Plaintiff alleges that her failure to report her prior marijuana use was accidental, not purposeful.  (Pl. 56.1 Response ¶ 4).

Plaintiff retired from the NYPD in August 2007 and applied for a position with the City of Atlanta Police Department ("APD"), the Metropolitan Atlanta Rapid Transit Authority ("MARTA"), and the Dekalb County Police Department.  (Def. 56.1 ¶ 2).  When Plaintiff applied for a position with the APD, she did not report any prior drug use; however, Plaintiff subsequently admitted such drug use to an APD proctor who was administering a voice stress analysis test to Plaintiff.  (*Id.* at ¶ 4).  As a result, by letter dated November 15, 2007, Plaintiff

---

[1]     The facts alleged herein are drawn from Defendants' Rule 56.1 Statement ("Def. 56.1") (Dkt. #28) and Plaintiff's responses thereto ("Pl. 56.1 Response") (Dkt. #34); the Declaration of Jane E. Andersen ("Andersen Decl.") (Dkt. #29), and the exhibits attached thereto; the Declaration of Moshe Bobker ("Bobker Decl.") (Dkt. #35), and the exhibits attached thereto; the Supplemental Declaration of Jane E. Andersen ("Andersen Supp. Decl.") (Dkt. #38), and the exhibits attached thereto; and the transcript of Plaintiff's deposition taken on January 25, 2013 ("Walker Tr.").  For convenience, Defendants' Memorandum of Law will be referred to as "Def. Br." (Dkt. #30); Plaintiff's Opposition as "Pl. Opp." (Dkt. #33); and Defendants' Reply as "Def. Reply" (Dkt. #36).

Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") requires a party moving for summary judgment to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Local Rule 56.1(a).  The movant's asserted facts are deemed to be admitted unless specifically controverted by the statement served by the opposing party.  Local Rule 56.1(c).

was denied employment by the APD based upon a "Deliberate Omission/ Falsification" in her application.  (*Id.* at ¶ 3).  Notably, Plaintiff does not believe that the APD's decision not to hire her after learning of her false statement in its application is discriminatory.  (*Id.* at ¶ 6).

On November 9, 2007, Plaintiff applied for reinstatement with the NYPD. (Def. 56.1 ¶ 7; Walker Tr. 51).  By letter dated November 26, 2007, the NYPD confirmed receipt of Plaintiff's application, and informed her that "[a]n investigation will be conducted concerning your job performance while a member of the Department, and your activities since leaving the Department." (Def. 56.1 ¶ 9).  The letter also notified Plaintiff that she would be required to submit to medical and psychological examinations, and that consideration of her application for reinstatement would take approximately three months. (*Id.*).

Plaintiff's psychological review was conducted on January 4, 2008.  (Def. 56.1 ¶ 11).  Plaintiff was provided with medical release forms, and was instructed to submit those forms to MARTA, so that MARTA could provide the NYPD with Plaintiff's psychological tests.  (*Id.* at ¶ 12).  Plaintiff alleges that she was informed by MARTA that such a release had to come from the NYPD directly.  (Pl. 56.1 Response ¶ 13).  Accordingly, Plaintiff called both MARTA and the NYPD regularly to request that her records be sent to the NYPD.  (*Id.*).

In March 2008, Plaintiff was informed that her application had been closed because the NYPD had received no information from MARTA.  (Def. 56.1

3

¶ 13).  In July 2008, MARTA provided the requested information to the NYPD, which then advised Plaintiff to resubmit her application for reinstatement.  (*Id.* at ¶ 14).  Plaintiff did, and she was subsequently determined to be medically and psychologically qualified by the NYPD's Medical Division.  (*Id.* at ¶ 15).  As a result, on August 8, 2008, the NYPD advised Plaintiff that it had all the information necessary to make a determination with respect to her application for reinstatement.  (*Id.* at ¶ 16).

Around that time, Plaintiff called her designated contact person at the NYPD, Officer Jenimarie Garcia-Cruz, to discuss why her application had been delayed.  Plaintiff testified that she told Officer Garcia-Cruz:

> I just told her, you know, I just don't feel like, you know, everything that's going on.  Nobody's helping me.  I just felt like if I was different, maybe somebody would help me.  I had a lot of people call her to speed up the process, but I don't know if that annoyed her.  I just felt like she was discriminating against me, and not doing what she needed to do to ensure [that] my folder [went] through in a timely fashion.

(Def. 56.1 ¶ 26).  Plaintiff further testified that Officer Garcia-Cruz had a "bad [] disposition" when they spoke over the phone.  (*Id.* at ¶ 27).  However, Plaintiff also testified that she and Officer Garcia-Cruz never spoke of Plaintiff's race. (Walker Tr. 67).

## B.   The Denial of Plaintiff's Application for Reinstatement

On August 19, 2008, Lieutenant Lorenzo Womack, the Operations Coordinator of the NYPD's Applicant Processing Division, recommended that Plaintiff's request for reinstatement be denied, stating:

> The Reinstatement was disqualified by The Atlanta Police Department for discrepancies in the area of drug use.  A review of the original case that the candidate was hired from in July of 2001 yield[ed] inconsistent statements made by her during the initial investigation in the same area of drug use.  Therefore Recommend[] DISAPPROVAL for reinstatement.

(Def. 56.1 ¶ 17).

Inspector Walter T. Salowski, Commanding Officer of the NYPD's Applicant Processing Division, concurred with Lt. Womack's recommendation. (Def. 56.1 ¶ 18).  Thereafter, the NYPD informed Plaintiff that her application for reinstatement was denied.  While there is no evidence in the record concerning when, if at all, the NYPD informed Plaintiff of the reasons for the denial, the parties are in agreement that Plaintiff surmised (correctly, as it turns out) that her application had been denied based upon her report of previous marijuana use to, and her rejection from, the APD.  (*Id.* at ¶ 19; Pl. 56.1 Response ¶ 19).

On September 10, 2008, Plaintiff wrote to then-Police Commissioner Raymond Kelly regarding the denial of her application for reinstatement. (Andersen Decl., Ex. F).  Significantly, Plaintiff did not suggest in that letter that either the decision denying her reinstatement request or the delay in arriving at that decision amounted to gender- or race-based discrimination. Instead, Plaintiff sought to explain her omission of information about prior drug use from the application.  In particular, Plaintiff stated that she was "was not intentionally trying to withhold information" from the NYPD, but rather that, as a result of her interview with the APD, she had recollected an incident

of trying marijuana "as a juvenile" that she had previously forgotten.  (*Id.*).

Plaintiff closed the letter by writing, "I have never used drugs while employed

with the New York City Police Department.  I feel like my Character and

integrity is being misjudged…. My part of lack of understanding [of] the

question should not be the determining factor of me being re-hired to the New

York City Police Department."  (*Id.*).

By letter dated December 11, 2008, Rafael Pineiro, the NYPD's Chief of

Personnel, informed Plaintiff that the Department had reviewed the NYPD's

records to ensure that the decision to deny Plaintiff's reinstatement was made

in accordance with the Civil Service Rules and Regulations of the City of New

York.  (Def. 56.1 ¶ 21).  He further noted that decisions regarding

reinstatement were "made at the discretion of the agency."  (*Id.*).

## C.    Plaintiff's Claims of Discrimination

At her deposition, Plaintiff claimed that "the [NYPD] was discriminating

against me [because] of my gender," citing, among other things, the length of

time it took to resolve her reinstatement request:

> From the beginning, why would it take me five months
> for a problem to be corrected when it takes other people
> two weeks to go through.  They said when I started the
> process it usually generally takes from two weeks to a
> month, something like that.  This strung on for five
> months.

(Def. 56.1 ¶ 28).  As further support, Plaintiff cited a white male police officer,

Michael Schmidt, who had separated from the NYPD to work for another police

department, but who had been reinstated at the NYPD approximately three

weeks after applying to do so.  (*Id.* at ¶ 24).  Plaintiff did not know when

Schmidt came back to the NYPD, nor could she recall any details about his

reinstatement process.  (*Id.* at ¶ 25).

Plaintiff further claimed at her deposition that Chief Pineiro discriminated

against her based upon her race and gender, because "[i]t's no reason for me to

not have been rehired.  And based on the department's … discretion?  What is

it?  Other white officers, males, h[ave] separated from the department, and they

c[a]me back.  Separated two and three times, and they c[a]me back.  But I

wasn't allowed to come back."  (Def. 56.1 ¶ 29).

Plaintiff submitted an intake questionnaire with the United States Equal

Employment Opportunity Commission ("EEOC") on July 21, 2009.  (Def. 56.1

¶ 23).  Plaintiff filed a formal Charge of Discrimination (the "Charge") with the

EEOC on October 1, 2009.  (Def. 56.1 ¶ 23).  On both the intake questionnaire

and the Charge, Plaintiff checked the boxes for "Race" and "Sex"

discrimination, but did not check the box for "Retaliation."  (Andersen Decl.,

Ex. E).  In the Charge, Plaintiff alleged:

> I am an African American female.  I was hired by the
> New York City Police Dep[artmen]t in December 2001 as
> a police officer but resigned 07-29-2007[].  I left the job
> on good terms, at all times was qualified for my position
> and performed it satisfactorily.  I applied for
> reinstatement in October 2008[2] and received a letter
> from Chief Rafael [Pineiro] stating my request was
> denied.  I know of a white male named Michael Schmidt
> who[] worked in the same unit I did, who resigned from

---

[2]     Plaintiff conceded that this date was incorrect; she applied for reinstatement in
November 2007 and July 2008.  (Walker Tr. 76).

> the New York City Police Department twice and [was]
> allowed reinstatement both times. I was not given a
> reason for the denial of my request. I believe that my
> reinstatement was denied because I am an African
> American female in violation of Title VII of the Civil
> Rights Act of 1964, as amended.

(Andersen Decl., Ex. E). Plaintiff received a Right to Sue letter from the EEOC

on February 7, 2011. (Compl. ¶ 13).

## D.    The Instant Action

Plaintiff initiated this action on April 29, 2011. (Dkt. #1). The case was

reassigned to the undersigned on June 14, 2013. (Dkt. #20). Defendants

moved for summary judgment on September 16, 2013. (Dkt. #27). Plaintiff

filed her opposition on November 15, 2013 (Dkt. #33), and the motion was fully

briefed as of the filing of Defendants' reply on December 6, 2013 (Dkt. #36).

The Court now considers Defendants' motion for summary judgment.

## DISCUSSION

## A.    Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment may be

granted only if all the submissions taken together "show that there is no

genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The

moving party bears the initial burden of demonstrating "the absence of a

genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if

it "might affect the outcome of the suit under the governing law," and is

8

genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movant may discharge this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party fails to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles* v. *General Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).

The Second Circuit "has repeatedly emphasized the need for caution about granting summary judgment to an employer in a discrimination case where … the merits turn on a dispute as to the employer's intent." *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp* v. *Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment, and show more than 'some metaphysical doubt as to the material facts.'" *Gorzynski*, 596 F.3d at 101 (citing *Matsushita*, 475 U.S. at 586).

## B.   Analysis

### 1.   Several of Plaintiff's Claims Are Procedurally Improper

#### a.   Defendants Kelly and Pineiro Are Improperly Named in Plaintiff's Title VII Claims

At the outset, the Court must dismiss Plaintiff's Title VII claims brought against Defendants Kelly and Pineiro individually, because individuals are not subject to Title VII liability. *See Spiegel* v. *Schulmann,* 604 F.3d 72, 79 (2d Cir. 2010) (per curiam). The Court further dismisses the Title VII claims brought against these defendants in their official capacities, because such claims are duplicative of Plaintiff's claim against the City of New York. *See Yu* v. *N.Y. State Unified Court Sys. Office of Court Admin.*, No. 11 Civ. 3226 (JMF), 2013 WL

10

3490780, at *4 (S.D.N.Y. July 12, 2013) ("[A] plaintiff may not bring a Title VII claim against an individual in his or her official capacity if the claim is duplicative of the claim against the public employer." (internal citation omitted)).

### b.   Plaintiff's Title VII Claims Are Time-Barred

Additional procedural defaults beset Plaintiff's Title VII claims.  It is well-settled that an "aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act."  *Petrosino* v. *Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004) (internal citation omitted); 42 U.S.C. § 2000e-5(e); *see also Federal Express Corp.* v. *Holowecki*, 552 U.S. 389, 402-05 (2008) (discussing circumstances under which an EEOC intake questionnaire can qualify as a charge for Title VII purposes).  "This requirement serves as a statute of limitations, in that discriminatory incidents that are not timely filed with the EEOC will be time-barred from plaintiff's suit in the district court."  *Coleman* v. *Bd. of Educ., City of New York*, No. 96 Civ. 4293 (GBD), 2002 WL 63555, at *5 (S.D.N.Y. Jan. 16, 2002) (citing *Quinn* v. *Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998)).  Thus, any claims brought in connection with conduct that occurred prior to September 21, 2008 (a date 300 days prior to Plaintiff's filing of the intake questionnaire on July 21, 2009), are time-barred.

An exception to the 300-day statute of limitations exists where plaintiff establishes a "continuing violation."  *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536

U.S. 101, 113 (2002).  Under this exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Hongyan Lu* v. *Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (summary order) (citing *Lambert* v. *Genessee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).  The Second Circuit, however, has "cautioned … that while this theory may apply to 'cases involving specific discriminatory policies or mechanisms, … multiple incidents of discrimination, *even similar ones*, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'"  *Id.* (internal citation omitted, emphasis in original).  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114.

Plaintiff concedes that her Title VII claims would otherwise be untimely, yet argues that they are saved by the continuing violations doctrine.  (Pl. Opp. 5-6).  Specifically, Plaintiff argues that her September 10, 2008 letter to then-Commissioner Kelly tolled the applicable statute of limitations, and that her failure to hire claim accrued on December 11, 2008, upon receipt of a letter from Chief Pineiro confirming the denial of her application for reinstatement. (Pl. Opp. 6).  Plaintiff's argument fails for several reasons.  First, the continuing

violation doctrine generally does not apply to "failure to hire" cases such as this one.  *E.E.O.C.* v. *Cushman & Wakefield, Inc.*, 643 F. Supp. 209, 214 (S.D.N.Y. 1986) ("[A]cts concerning hiring ... do not constitute continuing violations." (internal quotation marks and citations omitted)); *Wilkins* v. *New York City Dep't of Prob.*, No. 98 Civ. 6611 (DAB), 2001 WL 262601, at *3 (S.D.N.Y. Mar. 15, 2001) ("When only an isolated incident of nonhiring is alleged, as Plaintiff does here, the continuing violation exception does not apply."); *Mareno* v. *Madison Square Garden, L.P.*, No. 98 Civ. 2719 (WHP), 1999 WL 777952, at *5 (S.D.N.Y. Sept. 29, 1999) (dismissing Title VII failure to hire claims, and holding that "[t]he continuing violation doctrine is inapplicable in this case").

Second, Plaintiff's letter did not toll the statute of limitations for her failure to hire claim, which accrued when Plaintiff was informed or had reason to know of the failure to hire.  *See Delaware State Coll.* v. *Ricks*, 449 U.S. 250, 258 (1980) (Title VII claims accrued "at the time the [discriminatory act occurred and was] communicated to [the plaintiff]"); *see also id.* at 261 ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." (internal citation omitted)); *Mareno*, 1999 WL 777952, at *5 (limitations period for failure to hire claim accrued when the plaintiff was "on notice of each allegedly discriminatory hiring decision," which was immediately after the decision occurred).  Plaintiff was indisputably aware that her application for

13

reinstatement was denied as of at least September 10, 2008.[3]  Thus, Plaintiff's failure to hire claim accrued as of that date, and is therefore untimely.  *See Coleman*, 2002 WL 63555, at *6 (holding that the plaintiff's failure to hire claim accrued when she was aware of her cause of action, and was not tolled by a union's investigation into her allegations of discriminatory failure to hire).[4]

Third, Plaintiff has offered no evidence that the denial of her reinstatement application was pursuant to any policy or practice.  *See Hongyan Lu* v. *Chase Inv. Serv. Corp.*, 412 F. App'x 413, 416 (2d Cir. 2011) (summary order).  Fourth and finally, Plaintiff has not alleged, and the Court does not find, any reason for equitable tolling of the statute of limitations so as to render Plaintiff's Title VII claims timely.  *Baroor* v. *New York City Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (summary order) ("Equitable tolling is … 'only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights.'" (quoting

---

[3]    The parties have not provided the date the NYPD notified Plaintiff of the denial of her reinstatement application, beyond the fact that it was sent prior to September 10, 2008, the date on which Plaintiff wrote to appeal the denial.  (Walker Tr. 78).  The evidence submitted in connection with this motion indicates that the internal NYPD decision to deny Plaintiff's application for reinstatement was made on or about August 19, 2008.  (*See* Andersen Decl., Ex. H).  Thus, the Court assumes that as of September 10, 2008, Plaintiff had been notified that her application had been denied.

In addition, to the extent Plaintiff is alleging that the NYPD's delay in addressing her first application for reinstatement was a continuing violation that existed separate and apart from the denial of her second application, that claim accrued no later than the closure of the application in March 2008.  This claim is equally untimely, and is also not saved by the continuing violations doctrine, for the reasons discussed in the text.

[4]    Similarly, Plaintiff's retaliation claim accrued as of at least September 10, 2008, so to the extent Plaintiff has alleged a viable Title VII retaliation claim, that claim is untimely.  *James* v. *Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 310 (E.D.N.Y. 2012) (for Title VII retaliation claim, "the clock begins to run at the time the adverse employment action occurred" (internal citation omitted)).

*Zerilli-Edelglass* v. *New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003))).

As such, Defendants are entitled to summary judgment on Plaintiff's Title VII

claims on limitations grounds.[5]

### c. Plaintiff's Title VII Retaliation Claims Are Procedurally Barred for Failure to Exhaust Administrative Remedies

Plaintiff's retaliation claims are subject to a separate procedural bar. "A

district court may only hear claims that are either included in the EEOC

charge or are based on conduct which is reasonably related to conduct alleged

in the EEOC charge." *Fiscina* v. *New York City Dist. Council of Carpenters*, 401

F. Supp. 2d 345, 356 (S.D.N.Y. 2005) (internal quotation marks and citation

omitted); *see generally Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir.

2001). The Second Circuit instructs that "'a claim is considered reasonably

related if the conduct complained of would fall within the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge that

was made.'" *Williams* v. *New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir.

2006) (quoting *Fitzgerald* v. *Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)).

"This exception to the exhaustion requirement is essentially an allowance

of loose pleading and is based on the recognition that EEOC charges frequently

are filled out by employees without the benefit of counsel and that their

primary purpose is to alert the EEOC to the discrimination that a plaintiff

claims he is suffering." *Deravin* v. *Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)

---

[5]    This decision has little practical effect, inasmuch as Defendants would be entitled to
summary judgment on Plaintiff's Title VII claims on the merits, for the reasons set forth
*infra*.

(internal quotation marks and citation omitted).  To determine whether a claim is "reasonably related" to a claim included in an EEOC charge, courts should focus "on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving," and ask the "central question" of "whether the complaint filed with the EEOC gave the agency adequate notice to investigate discrimination on both bases." *Williams*, 458 F.3d at 70 (internal quotation marks and citations omitted).

In both her EEOC intake questionnaire and Charge, Plaintiff checked boxes referring to discrimination based on race and sex, and did not check the box referring to retaliation.  (Andersen Decl., Ex. E).  Similarly, the factual allegations contained in the Charge focused on discrimination, namely, Plaintiff's belief that "reinstatement was denied because [Plaintiff is] an African American female." (*Id.*).  There was nothing in the EEOC Charge that would have given the agency adequate notice to investigate Plaintiff's current allegations of retaliation.  Because Plaintiff did not exhaust her Title VII claims based on retaliation, and because this claim cannot be said to be reasonably related to the conduct actually alleged in Plaintiff's EEOC Charge, Defendants' summary judgment motion as to these claims is granted.  *See Hodges* v. *Holder*, No. 12-805-cv, — F. App'x —, 2013 WL 3836215, at *1 (2d Cir. July 26, 2013) (summary order) (holding that plaintiff's retaliation claims were properly dismissed because plaintiff failed to include those claims in his EEOC charge);

16

*Hoffman* v. *Williamsville School Dist.*, 443 F. App'x 647, 650 (2d Cir. 2011)

(summary order) (same).

> ### 2.   Defendants Are Entitled to Summary Judgment on Plaintiff's Section 1981, Section 1983, and NYSHRL Claims

> #### a.   The Allocation of Burdens under *McDonnell Douglas*

Proceeding now to the merits, the Court analyzes Plaintiff's claims for

employment discrimination under 42 U.S.C. § 1981,[6] 42 U.S.C. § 1983, and

the NYSHRL under the familiar burden-shifting approach set forth by the

Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See*

*Ruiz* v. *Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted).

Under this framework, "a plaintiff 'bears the burden of establishing a prima

facie case of discrimination,' which includes demonstrating that 'he suffered an

adverse employment action ... under circumstances giving rise to an inference

of discriminatory intent.'" *Maraschiello* v. *City of Buffalo Police Dep't*, 709 F.3d

87, 92 (2d Cir. 2013) (quoting *Mathirampuzha* v. *Potter*, 548 F.3d 70, 78 (2d

Cir. 2008)).  "'Once the prima facie case has been shown, the burden then

must shift to the employer to articulate some legitimate, nondiscriminatory

reason for the adverse employment action.'" *Id.* (quoting *United States* v.

*Brennan*, 650 F.3d 65, 93 (2d Cir. 2011)).  "[A]lthough the presumption of

---

[6]   "The express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett* v. *Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989).  As such, Plaintiff's Section 1981 claims are dismissed, because they are subsumed by her Section 1983 claims.  *See also Gladwin* v. *Pozzi,* 403 F. App'x 603, 605 (2d Cir. 2010) (summary order) ("[Plaintiff's] § 1981 claims are encompassed by her § 1983 claims, and both are therefore analyzed under § 1983." (citing *Jett*)); *Jeune* v. *City of New York*, No. 11 Civ. 7424 (JMF), 2014 WL 83851, at *3 (S.D.N.Y. Jan. 9, 2014) (same).

discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks and citation omitted).

### b. Plaintiff Has Not Established a Prima Facie Case of Discrimination

To establish a prima facie case of intentional discrimination, as Plaintiff claims here, Plaintiff must show that (i) she is a member of a protected class; (ii) she was qualified for the position she sought to hold; (iii) she suffered an adverse employment action; and (iv) the adverse action took place under circumstances giving rise to an inference of discrimination. *See, e.g., Reynolds* v. *Barrett*, 685 F.3d 193, 202 (2d Cir. 2012); *Ruiz*, 609 F.3d at 491-92. The parties do not seriously dispute that the first three elements are met. As such, the Court will focus on whether Plaintiff has presented evidence of circumstances giving rise to an inference of discrimination.[7]

An inference of discrimination may be discerned from a variety of circumstances, including "the employer's criticism of the plaintiff's performance in ethnically degrading terms," the employer's "invidious comments about

---

[7]    Plaintiff seems to suggest that the delay in resolving her application for reinstatement is itself is an adverse employment action subject to analysis under the *McDonnell Douglas* framework. (*See, e.g.*, Pl. Opp. 1, 8). The Court need not resolve that issue, however, since Plaintiff's failure to be reinstated plainly qualifies.

others in the employee's protected group," or "the more favorable treatment of employees not in the protected group." *Chambers* v. *TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted).

Plaintiff's claims in this regard are premised on her belief that white male applicants for reinstatement were treated more favorably by the NYPD than she, yet this belief is unsupported by the evidence. Plaintiff can recall only one white male who she alleges was treated more favorably: Michael Schmidt. But Plaintiff has put forth no evidence regarding when Schmidt separated ("I don't know"); when Schmidt applied for reinstatement ("I don't know"); where he worked during his separation ("somewhere in Florida"); precisely how long his reinstatement application was pending ("approximately three weeks"); whether that employer delayed in providing records to the NYPD; whether Schmidt had any similar discrepancies in his application regarding drug use ("Q: Do you have any knowledge about … what, if anything, occurred during his application process? A: No sir."); or even when Schmidt returned to the NYPD ("I don't know the exact date, no"). (Walker Tr. 60-64). Plaintiff has thus alleged no facts from which the Court, or any factfinder, could discern any discriminatory intent. *See Whyte* v. *Nassau Health Care Corp.*, No. 08 Civ. 2399 (DRH) (GRB), 2013 WL 4525725, at *7 (E.D.N.Y. Aug. 27, 2013) (granting summary judgment to defendants where the plaintiff "fail[ed] to offer any evidence concerning the

circumstances of these other employees other than that they worked in the same department").[8]

Plaintiff next argues that the "manner in which" the NYPD handled her application and denial gives rise to an inference of discrimination. (Pl. Opp. 8). Again, Plaintiff has failed to support this allegation with any evidence. It is undisputed that Plaintiff's first application was delayed while MARTA provided certain documents to the NYPD; a fact Plaintiff herself recognized. (Walker Tr. 54-57, 69 (testifying to the steps she took to ensure that MARTA submitted the requested information to the NYPD, and observing that those steps took several months)). When those records were finally received, the NYPD

---

[8]   Similarly, Plaintiff submits various rudimentary statistical calculations and argues that they support her claim for discrimination. (Bobker Decl., Ex. C). For instance, Plaintiff alleges that "of the 136 applicants for reinstatement to the NYPD," 81% of white males (49 out of 59) were reinstated, while only 50% of black females (3 out of 6) were reinstated. (*See* Pl. Opp. 9).

Plaintiff has done nothing to separate these statistics by year, length of application, time away from the NYPD, activities during separation, or, perhaps most importantly, other applicants who were found to have omitted information from their applications. Moreover, Plaintiff has not introduced these statistics through an expert witness, controlled for other factors in her calculations, or applied any sort of rigorous analysis to increase the reliability of these numbers.

Without more, the statistics upon which Plaintiff relies are meaningless, and can neither support a prima facie case nor rebut Defendants' legitimate, non-discriminatory basis for denying Plaintiff's application for reinstatement. *See, e.g.*, *Lomotey* v. *Connecticut-Dep't of Transp.*, 355 F. App'x 478, 481 (2d Cir. 2009) (summary order) ("[Plaintiff's] evidence that only Caucasians were selected for these placements amounts to nothing more than raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, cannot support an inference of discrimination."); *Hudson* v. *Int'l Bus. Machines Corp.*, 620 F.2d 351, 355 (2d Cir. 1980) (distinguishing "disparate impact" from "disparate treatment" cases, and noting that only in the former category can statistical evidence establish a prima facie case; "Hudson has failed to establish his case and the statistics standing alone do not create it."); *Lee* v. *Poughkeepsie City School Dist.*, No. 06 Civ. 4660 (KMK), 2008 WL 852790, at *10 n.7 (S.D.N.Y. Mar. 31, 2008) (finding that statistics alone are insufficient to establish a disparate treatment claim because an individual plaintiff must prove that she in particular has been discriminated against) (collecting cases).

encouraged Plaintiff to reapply.  (Def. 56.1 ¶¶ 13-14).  Plaintiff's second application was pending for fewer than three months.  In addition, Plaintiff's only evidence that the process was discriminatory is that one NYPD employee exhibited a "bad [] disposition" on a phone call.  (Def. 56.1 ¶ 27).  Without more, such an allegation does not give rise to an inference of discrimination. Plaintiff's conclusory, subjective statement that the delay was due to any discrimination is unsupported in the record and cannot defeat summary judgment.  *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context … a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." (internal citation omitted)); *see generally Dorfman* v. *Doar Communications, Inc.*, 314 F. App'x 389, 390 (2d Cir. 2009) (summary order) ("A plaintiff cannot establish a prima facie case based on 'purely conclusory allegations of discrimination, absent any concrete particulars.'" (quoting *Meiri* v. *Dacon*, 759 F.2d 989, 998 (2d Cir. 1985))).

Moreover, to the extent Plaintiff asserts that the NYPD's request for records from MARTA evinces discriminatory intent, the Court disagrees. Plaintiff was clearly informed that such records would be requested at the outset of her reinstatement process as a matter of course.  (Def. 56.1 ¶ 9 (November 2007 letter from the NYPD notifying Plaintiff that "[a]n investigation will be conducted concerning your job performance while a member of the Department, *and your activities since leaving the Department*" (emphasis

added))).  More importantly, Plaintiff has not alleged that Schmidt's records were not requested, only that his reinstatement took a matter of weeks.  (Def. 56.1 ¶ 24).

Plaintiff testified that she felt the delay in her application and eventual denial were a result of her race and gender.  (Walker Tr. 67).  But Plaintiff's "feeling" of being discriminated against cannot carry the day here; because Plaintiff has failed to introduce any evidence to support these allegations, Defendants are entitled to summary judgment on Plaintiff's Section 1981, 1983, and NYSHRL claims.  *See Guerrero* v. *Fire Dep't, City of N.Y.*, No. 07 Civ. 3986 (SHS) (KNF), 2009 WL 1563532, at *9 (S.D.N.Y. June 2, 2009) (finding plaintiff's evidence of unlawful termination insufficient because "[c]onclusory allegations of discrimination, without more," do not meet the requirements under Rule 56(e) in order to defeat a summary judgment motion).

### c.   Plaintiff Has Failed to Identify a Genuine Issue of Material Fact Regarding Pretext

In any event, even if Plaintiff had carried her initial burden of establishing a prima facie case, she cannot rebut Defendants' legitimate, non-discriminatory reason for denying her application for reinstatement.  Plaintiff's application contained statements regarding past drug use that even she concedes were "inconsistent"; the NYPD denied her application on this basis. (Pl. Opp. 10; Def. Br. 6-7).  Though Plaintiff's decision to omit mention of her juvenile indiscretions has led to unfortunate consequences, New York State courts have found similar omissions to be rational bases upon which the NYPD

22

may deny applications for employment.  (*See* Def. Br. 4-5 (collecting cases)).

Defendants have thus demonstrated a legitimate, non-discriminatory reason

for Plaintiff's termination; accordingly, "once the employer has proffered its

nondiscriminatory reason, the employer will be entitled to summary

judgment … unless the plaintiff can point to evidence that reasonably supports

a finding of prohibited discrimination." *James* v. *New York Racing Ass'n*, 233

F.3d 149, 154 (2d Cir. 2000) (internal citation omitted).

Plaintiff bears the burden of demonstrating that Defendants' proffered

reason for hiring her was pretextual; Plaintiff can satisfy this burden "by

showing that similarly situated employees outside the protected class received

more favorable treatment than the plaintiff did." *Anderson* v. *Hertz Corp.*, 507

F. Supp. 2d 320, 327 (S.D.N.Y. 2007) (citing *Graham* v. *Long Island R.R.*, 230

F.3d 34, 39 (2d Cir. 2000)).  To be similarly situated with Plaintiff, those

individuals must be "similarly situated in all material respects." *Shumway* v.

*United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citing *Mitchell* v. *Toledo*

*Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).  Finally, while the determination of

whether two employees are similarly situated is normally "a question of fact for

the jury … this rule is not, however, an absolute.  A court can properly grant

summary judgment where no reasonable jury could find the similarly situated

prong met." *Spiegler* v. *Israel Disc. Bank of New York*, No. 01 Civ. 6364 (WK),

2003 WL 21983018, at *2 (S.D.N.Y. Aug. 19, 2003) (internal quotation marks

and citations omitted).  This is such a case.  As discussed *supra*, Plaintiff has

23

failed to introduce any facts from which the Court, or any factfinder, could determine whether Schmidt is similarly situated to Plaintiff. On the record before the Court, Plaintiff and Schmidt are similarly situated only in that they both separated from the NYPD and then both reapplied for reinstatement. This clearly does not constitute "all material respects."

Plaintiff's remaining pretext arguments can be dismissed in short order. (Pl. Opp. 10-11). First, Plaintiff alleges that Defendants had a "policy and practice" of not requiring "a background investigation and the like, so long as the applicant seeks reinstatement within one year of his or her resignation." (Pl. Opp. 10). Given that policy, Plaintiff reasons, the NYPD's consideration of her reinstatement request went impermissibly "beyond normal practice." (*Id.*). Significantly, however, Plaintiff has introduced no evidence of this "policy and practice"; what is more, Defendants have introduced evidence directly contradicting this allegation. (*See* Def. Reply 5 (citing to Rule 6.2.2.(a) of the Personnel Rules and Regulations of the City of New York, which provides that a reinstated employee may be subject to such investigation, qualifying tests, or requirements as the commissioner shall determine to be appropriate)).

Second, Plaintiff argues that the relevant questions on the APD and NYPD applications request different information about the applicant's prior drug use (and, by extension, that her answers were not inconsistent); but a review of the questions makes clear that they call for the same answers. (*Compare* Bobker Decl., Ex. B, *with* Andersen Decl., Ex. C). Finally, Plaintiff

24

seeks to harmonize her deposition testimony that the APD's decision not to hire was not discriminatory with her current claim that the NYPD's decision not to reinstate her was discriminatory; to that end, she argues that her inconsistent answers should have been less relevant (if not irrelevant) to the NYPD because of her prior tenure as a NYPD officer.  (Pl. Opp. 11).  Again, the Court disagrees.  After learning that Plaintiff had made an inconsistent statement in her initial application, and that a similarly inconsistent statement had resulted in her disqualification from another police department, the NYPD was not required to reinstate Plaintiff.  For all of these reasons, summary judgment is warranted as to Plaintiff's Section 1981, Section 1983, and NYSHRL claims.

### 3.    The Court Declines to Exercise Jurisdiction over Plaintiff's NYCHRL Claims

Having dismissed Plaintiff's federal and New York State law claims, the Court declines to exercise jurisdiction over Plaintiff's NYCHRL claims.  *See, e.g.*, *Yu*, 2013 WL 3490780, at *8 (granting summary judgment on federal claims but declining to exercise jurisdiction over NYCHRL claims, in part because they involve the application of "different standards"); *Vuona*, 2013 WL 271745, at *28 (same, finding that the NYCHRL requires application of a standard "with which the [New York] state courts are more familiar").[9]

---

[9]    In her Complaint, Plaintiff also brought claims for (i) hostile work environment; (ii) due process violations under the Fourteenth Amendment; and (iii) First Amendment retaliation.  (Compl. ¶¶ 39-53, 59-63, 74-88).  Defendants moved for summary judgment on those claims, to the extent Plaintiff sought to raise them.  (*See* Def. Br. 12-14).  Plaintiff failed to address those claims in her opposition brief, and has similarly failed to specify any facts in the record that would substantiate such claims.  For these reasons, the Court deems those claims abandoned, and grants summary judgment in favor of Defendants.  *See Bronx Chrysler Plymouth, Inc.* v. *Chrysler Corp.*, 212 F. Supp.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate Docket Entry 27, and to mark the case as closed.

SO ORDERED.

Dated:  March 26, 2014
      New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

2d 233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned because non-movant "ma[d]e no argument in support of th[e] claim at all" in its summary judgment opposition papers).  In the alternative, to the extent it is more appropriate to construe the situation as one in which Defendants' summary judgment motion is unopposed with respect to those claims, summary judgment is warranted for substantially the reasons set forth in Defendants' memorandum of law.  *See Champion* v. *Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam).